IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2012 SEP -7  PM 5: 02

DEPUTY CLERK_____

| | | |
|---|---|---|
| TRACIE L. DOWNING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:11-CV-0170 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## TO AFFIRM DECISION OF THE COMMISSIONER

Plaintiff TRACIE L. DOWNING brings this cause of action pursuant to 42 U.S.C.

§ 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner

of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits

(DIB).  Both parties have filed briefs in this cause.  For the reasons set out herein, the undersigned

United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not

disabled and not entitled to benefits be AFFIRMED.

### I.
### THE RECORD

Plaintiff filed an application for DIB on October 17, 2008 seeking disability benefits from

June 1, 2003, her alleged onset date, through December 31, 2008, the date she last met the insured

status for DIB.  (Tr. 107-08, 122).  Plaintiff alleged her ability to work is limited by shoulder

problems post-surgery, Graves disease, memory loss, migraines, muscle weakness, fluid gain, right

hand tremors, possible Parkinson's disease, and hyperthyroid issues. (Tr. 133). Plaintiff averred her physical conditions affect lifting, standing, reaching, walking, talking, stair climbing and using her hands. (Tr. 148). Plaintiff averred her mental conditions affect her memory, concentration, understanding and ability to follow instructions. (Tr. 148). Plaintiff reported muscle weakness in her legs, unsteadiness in her balance, loss of grip in her right hand and strength in her arms, all over body aches and pains, sleep problems, and depression, irritability and fatigue. (Tr. 156, 160, 162). Plaintiff noted she completed the 12th grade in school, took several years of college classes, and identified her past work as a dialysis technician. (Tr. 35, 48, 125-27, 140).

Upon review of plaintiff's medical documentation, a State agency non-examining physician diagnosed plaintiff with "right hand tremor" and "affective/mood disorders" and found plaintiff not disabled. (Tr. 54). On February 2, 2009, the Social Security Administration found that although plaintiff has some limitations, her daily activities were not significantly affected, her ability to perform basic work activities was not as limited as she indicated, and that she had the ability to perform her past work as she described it. The Administration denied plaintiff disability benefits. (Tr. 56-60)

Upon reconsideration, a State agency non-examining physician reviewed plaintiff's medical evidence and diagnosed plaintiff with "thyroid, all disorders of Grave's disease"[1] and "somatoform disorders"[2] but again found plaintiff not disabled. (Tr. 55). On April 29, 2009, the Social Security

---

[1] An immune system disorder that results in the overproduction of thyroid hormones. *www.MayoClinic.com*

[2] "Somatoform disorder is the name for a group of conditions in which the physical pain and symptoms a person feels are related to psychological factors. These symptoms can't be traced to a specific physical cause. In people who have a somatoform disorder, medical test results are either normal or don't explain the person's symptoms.

People who have this disorder may have several medical evaluations and tests to be sure that they don't have another illness. They often become very worried about their health because they don't know what's causing their health problems. Their symptoms are similar to the symptoms of other illnesses and may last for several years. People who have a somatoform disorder are not faking their symptoms. The pain that they feel is real." *www.FamilyDoctor.org*

Administration found that the medical reports did not show plaintiff's daily activities were significantly affected, and that while her condition may prevent her from performing her past work, that she could perform less demanding work. The Administration again denied plaintiff disability benefits. (Tr. 62-65). Plaintiff appealed the Administration's decision and listed the following limitations in addition to those previously asserted: bone spur removal, right foot heel; changes in back indicating some arthritis; worsening pain all over; constant fatigue; and trouble walking. (Tr. 166).

On April 22, 2010, an administrative hearing was held before an Administrative Law Judge (ALJ). (Tr. 32-53). At the hearing, the ALJ noted plaintiff had both physical and mental impairments, but her attorney advised plaintiff's case was primarily a "pain case." (Tr. 34). Plaintiff advised she was 39 years old at the time of the hearing, and had taken college classes relevant to her previous work as a dialysis technician. (Tr. 35). Plaintiff advised she began experiencing left shoulder problems while working as a dialysis technician, forcing her to stop work in September 2003, and eventually resulting in rotator cuff surgery in February 2004. (Tr. 35-38). Plaintiff testified that after post-surgery rehabilitation, she subsequently lost her job, not due to absenteeism, but because she was limited to light duty by her physicians. (Tr. 36). Plaintiff explained her shoulder improved but that she was unable to do other less strenuous work because she still experienced pain in her shoulder, had a history of migraines, and problems with her feet. (Tr. 39-40). Plaintiff explained she had experienced tremors in her right hand for several years but never did anything about it "because they'd kind of shake and go away." (Tr. 40). Plaintiff advised she "can't write very well" when she is experiencing the tremors, and explained they are typically brought on by strenuous use of her right hand – her dominant hand – but that the tremors do not hurt but are "annoying and embarrassing." (Tr. 41-42).

On examination by her attorney, plaintiff testified she has fibromyalgia and experiences extreme, constant, all over body pain (although predominately in her back and side area) which, although it might be better sometimes, is always there. (Tr. 42-43). Plaintiff also testified her migraines are brought on when the weather changes, could last all day, and could occur up to three days in a row. (Tr. 43-44). Plaintiff testified she also experiences numbness and tingling in her arms and occasionally in her feet, and notices such numbness primarily when she is "hurting really bad." (Tr. 45). Plaintiff also advised she experiences muscle weakness, loss of strength, ability to lift, and grip in her right hand, fatigue and pain, and can not play outside sports with her children like she used to. (Tr. 46). Plaintiff testified she does not sleep well because of an inability to get comfortable. Plaintiff advised a good day entails waking, getting dressed, doing chores around the house and possibly grocery shopping, resulting in extreme fatigue. (Tr. 46-47). Plaintiff advised that on bad days, she does not want to get out of bed because of the pain. Plaintiff advised the main thing that keeps her from being able to work is the pain. (Tr. 47).

A vocational expert (VE) testified at the hearing that plaintiff's past relevant work (PRW) as a dialysis technician, while described as light in the DOT, was performed at the medium to heavy work levels, and that a restriction to light work would preclude her PRW as it was performed. (Tr. 48). When the ALJ posed a hypothetical limiting plaintiff to light work, with (1) only occasional fingering or handling, (2) no significant overhead work, and (3) only simple tasks, the VE testified plaintiff could perform other light, unskilled work such as a school bus monitor, a fruit distributor, or a bakery line worker, based on an 8-hour, 5-day work week. (Tr. 49-50). Upon examination by plaintiff's attorney, the VE acknowledged that a 25-30% decrease in concentration due to pain and migraine headaches could preclude performance of the school bus monitor job. (Tr. 50). The VE also clarified that the fruit distributor and bakery line worker jobs could involve

a moderate level of noise. (Tr. 52). The VE also clarified that most employers allow one to two days per month for sick leave, but would not allow one day of sick leave per week. (Tr. 53).

On May 13, 2010, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not under a disability as defined by the Social Security Act at any time from June 1, 2003, her alleged onset date, through December 31, 2008, the date plaintiff was last insured. (Tr. 14-31). The ALJ found plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured. (Tr. 16). The ALJ determined plaintiff has the following severe medical impairments,[3] *viz.*, left shoulder pain, status-post left shoulder arthroscopy; right (dominant) hand tremors; Graves' disease; affective mood disorder; and somatoform disorder. (Tr. 16). Concurring with the prior State Agency medical consultant's opinions, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."[4] (Tr. 17). The ALJ found that, through the date last insured, plaintiff retained the residual functional capacity (RFC)[5] to perform a restricted range of light work, limited by no overhead work, only occasional fingering or handling with her right (dominant) hand, and limited to simple tasks. (Tr. 18). Based upon his RFC finding that plaintiff can perform no more than the above-described reduced range of light work, the ALJ found plaintiff unable to perform her past relevant work as a dialysis technician.

---

[3]The ALJ found plaintiff's hyperthyroidism and laryngopharyngeal reflux impairments were not severe as they were resolved by treatment. (Tr. 17).

[4]The ALJ specifically considered Listing 1.02(B) with regard to plaintiff's shoulder impairment and her right hand tremors, Listing 9.02 for plaintiff's Graves' Disease, and Listings 12.04 (affective disorders) and 12.07 (somatoform disorders) for plaintiff's mental impairments. (Tr. 17).

[5]Residual functional capacity is what the claimant can still do despite the claimant's limitations. 20 C.F.R. § 220.120(a)

(Tr. 24).

Utilizing vocational expert (VE) testimony, the ALJ determined that, through the date last insured, and considering plaintiff's RFC, age, education, and past relevant work experience, plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the regional and national economies, *viz.*, light unskilled work as a school bus monitor, fruit distributor, or bakery line worker.[6]  (Tr. 25-27; 48-50).  The ALJ determined a finding of "not disabled" was appropriate under the Medical-Vocational Rules framework, and concluded plaintiff was not under a disability at any time from June 1, 2003, the alleged onset date, through December 31, 2008, the date last insured.  (Tr. 26).

On April 25, 2011, the Appeals Council denied plaintiff's request for review rendering the ALJ's determination that plaintiff was not under a disability during the relevant time period the final decision of the Commissioner.  (Tr. 3-5).  Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989).  To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and

---

[6]In his decision, the ALJ appears to have erroneously substituted the job of cashier for the job of bakery line worker identified by the VE.  (Tr. 26).

(4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

### III.
### ISSUE

Plaintiff argues the ALJ's decision is not supported by substantial evidence in the record because the ALJ committed reversible error by failing to:

1. Properly evaluate all of plaintiff's functional limitations and assess their impact on plaintiff's ability to perform work-related activity when determining plaintiff's RFC;

2. Give proper weight to the opinion evidence of plaintiff's treating physician;

3. Include all of plaintiff's functional limitations in the hypothetical posed to the vocational expert (VE), thereby failing to establish the existence of other work in significant numbers which plaintiff can perform; and

4. Properly evaluate plaintiff's credibility in light of her somatoform disorder mental impairment.

IV.
MERITS

A. RFC Evaluation

As noted above, the ALJ determined plaintiff has severe physical impairments of: (1) left shoulder pain, status-post arthroscopy, (2) right (dominant) hand tremors, and (3) Graves' disease. The ALJ further found there to be severe mental impairments of: (1) affective mood disorder, and (2) somatoform disorder. (Tr. 16). In evaluating whether plaintiff's mental impairments met a listing, the ALJ evaluated the impairments under the Part "B" criteria used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. (Tr. 17-18). In doing so, the ALJ found plaintiff's mental impairments caused moderate difficulties in the area of concentration, persistence or pace.[7] The ALJ further found that despite these moderate difficulties, plaintiff could "understand, remember and carry-out simple tasks." (Tr. 18). The ALJ then determined plaintiff has the RFC to perform (1) light work, (2) limited by no overhead work, (3) with only occasional fingering or handling with her right (dominant) hand, and (4) limited to simple tasks. The ALJ specifically noted the RFC reflected the degree of limitation he found in the Part "B" mental functional analysis at steps two and three. (Tr. 18).

In the concluding paragraphs of the section on RFC, however, the ALJ included the statement, "I find that the claimant's mental impairment is not severe." (Tr. 24) (emphasis added). Based on the entirety of the ALJ's decision, the undersigned finds this must have been a misstatement by the ALJ. The ALJ decision does not reflect that the ALJ's RFC was based on non-severe mental impairments and, in fact, reflects otherwise. To extent plaintiff challenges

---

[7]"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C3.

the ALJ's decision based on this misstatement, such challenge should be denied.

By her first ground, plaintiff argues the ALJ failed to properly evaluate and adequately incorporate all of her limitations into his RFC assessment. First, plaintiff contends the ALJ failed to adequately account for her nonexertional limitations ("moderate limitations in concentration, persistence and pace") due to her severe mental impairments (affective mood disorder and somatoform disorder). Plaintiff contends limiting a claimant to "simple tasks" in the RFC does not adequately incorporate "moderate difficulties in concentration, persistence and pace." Plaintiff contends the ALJ's RFC should have included a separate limitation of moderate difficulty with regard to concentration, persistence and pace.

Prior to making his RFC determination, the ALJ noted that, with regard to concentration, persistence, or pace, plaintiff had been evaluated as having moderate difficulties, but noted that he found the medical evidence did not support more than a moderate restriction in those areas. (Tr. 18). The ALJ further found that despite these difficulties/restrictions, plaintiff could understand, remember and carry-out simple tasks. In making these findings, the ALJ was speaking in reference to the "Part 'B'" criteria listed in the psychiatric review techniques, but also stated and acknowledged limitations identified in the Part"B" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process, and that the mental RFC assessment used at steps 4 and 5 requires a more detailed assessment of functions contained in the broad categories found in Part "B." The ALJ stated that the RFC assessment he would be making would reflect the degree of limitation he found in the Part "B" mental functional analysis. (Tr. 18). The ALJ's decision shows that he did consider the limitation of moderate difficulty with regard to concentration, persistence and pace, <u>and included it in his RFC</u>, by limiting plaintiff to understanding, remembering and carrying-out simple tasks. Stated

differently, the ALJ found that <u>even</u> <u>with</u> her moderate restriction in the area of concentration,

persistence or pace, plaintiff was not prevented from understanding, remembering and carrying out

simple tasks.

Consequently, while plaintiff is correct that the ALJ did not include, in his RFC, the

specific words "moderate difficulties in concentration, persistence or pace," the ALJ did not err

since he considered those moderate difficulties in reaching the RFC determination.  While an RFC

restriction to "understand, remember and carry-out simple tasks" <u>may</u> not always adequately

address a nonexertional limitation of "moderate difficulties in concentration, persistence or pace,"

*cf. Voyles v. Commissioner of Social Security Administration*, 2011 WL 825711 (N.D. Tex. 2011),[8]

it is not true that limiting a person to simple tasks can <u>never</u> incorporate moderate difficulties in

concentration, persistence and pace into it.  Plaintiff does not cite to any Fifth Circuit case law

which stands for this proposition.  The Court finds that in this case, the "simple tasks" restriction

did incorporate the "moderate difficulties" limitations as explained by the ALJ in his decision.  *Cf.*

*Gonzalez v. Commissioner of Social Security Administration*, 2012 WL 1058114 at *7 (N.D. Tex.

January 26, 2012) (the ALJ considered the "paragraph B" limitation of moderate difficulty with

regard to concentration, persistence and pace, and included such functional limitation in his RFC

assessment, by its degree of limitation, in limiting plaintiff to short and simple tasks and

instructions).  Moreover, plaintiff has not indicated how she was harmed in this instance by

identifying how the inclusion of those specific terms in the RFC would have eliminated one or

more of the jobs identified by the VE.

Further, review of the administrative record does not reveal objective medical evidence to

---

[8]In *Voyles*, it was not clear whether "moderate limitations in her ability to maintain concentration, persistence, or pace" were adequately encompassed simply by asking the VE whether jobs he had identified in response to a posed hypothetical which did not include the limitation were "fairly simple, routine, [and] repetitive or involv[ed] simple, routine, repetitive type tasks."

show plaintiff's mental impairments caused any specific difficulty. Plaintiff's statements in the medical record, as well as treatment notes by several treating and examining physicians, indicate plaintiff was not significantly limited, by her mental impairments, in her overall ability to maintain concentration, persistence and pace in work-related tasks, and certainly do not show the ALJ's determination that her moderate difficulties did not prevent plaintiff from understanding, remembering and carrying-out simple tasks was wrong. Plaintiff has not demonstrated the ALJ's failure to specifically include the words "moderate difficulties in concentration, persistence, or pace" in his RFC was reversible error.

Plaintiff next argues the ALJ failed to adequately account for her severe impairment of tremors in her right hand, maintaining the ALJ's RFC restriction to only occasional fingering or handling was not adequate to account for her right hand tremors. Plaintiff appears to argue the ALJ's failure to ask the VE whether she would be able to perform the jobs he identified if the tremors happened to occur during those limited periods of "occasional fingering or handling" amounted to a failure to properly evaluate the impact of her impairment. Plaintiff notes nothing in the record suggests her hand tremors can be controlled so as to only occur during off-task moments. Plaintiff concludes the ALJ failed to adequately account for her manipulation limitation in determining her ability to perform work-related activities.

Plaintiff testified at the hearing that her right hand tremors are sporadic or occasionally occurring, and to varying degrees of intensity. Such testimony was not disputed at the hearing.[9] The ALJ found plaintiff's hand tremors was a severe impairment which infers the ALJ expected plaintiff's condition to interfere with her ability to work. Consistent with that finding, the ALJ

---

[9] At a January 6, 2009 examination of plaintiff conducted for a disability evaluation for a State agency, Dr. Burgesser found plaintiff's right hand tremor is constant, occurring at rest as well as with intention. (Tr. 334-35)

restricted plaintiff to only occasional handling or fingering, finding that such functional limitation

would adequately accommodate for plaintiff's hand tremor impairment. The ALJ's finding

necessarily includes a determination that the right hand tremors would occur while performing job

activities, but that such tremors would not prevent a job which requires only occasional fingering

or handling. If the ALJ had found plaintiff could control her tremors as plaintiff interprets it, an

issue would indeed have been presented.[10]

The hypothetical posed to the VE included the "occasional fingering or handling"

functional limitation. There is no indication in the record that the VE was under the impression

plaintiff would not experience hand tremors while performing handling or fingering procedures on

the jobs he identified, even when plaintiff was only required to perform such procedures

occasionally. The undersigned finds the ALJ did not commit reversible error in failing to

specifically ask the VE whether plaintiff would be able to perform the jobs he identified if the

tremors happened to occur while she was fingering or handling, even if only occasionally, nor did

the absence of such a question amount to a failure to properly evaluate the impact of her tremor

impairment.

Lastly, plaintiff appears to argue the ALJ should have accounted for her complaints of

memory limitations and a doctor's opinion of the existence of a mild cognitive impairment in his

RFC determination. The ALJ stated he gave plaintiff "the benefit of every doubt as to claims of

memory loss" but found she was still able to "understand, remember, and carry-out simple tasks."

(Tr. 24). Other than the finding of a mild cognitive impairment, plaintiff does not point to any

objective medical evidence demonstrating she had limitations more restrictive than the ALJ's RFC

---

[10]Defendant appears to argue the VE heard plaintiff's testimony concerning the sporadic nature of her right hand tremors and thus, necessarily, incorporated this testimony into his evaluation. This Court disagrees. Without a specific instruction from the ALJ to the VE to include all aspects of a plaintiff's testimony into a hypothetical, it cannot be presumed that a VE has incorporated limitations alleged by a plaintiff but not incorporated by an ALJ into a hypothetical.

mental finding.  Plaintiff has not demonstrated the ALJ reversibly erred in failing to include an additional or more limiting RFC restriction for plaintiff's subjective memory loss allegations or the doctor's opinion of a mild cognitive impairment.  Plaintiff's first ground should be denied.

## B.  Treating Physicians Opinions

In June 2009, Dr. Carruth, a family practice physician and plaintiff's primary treating physician, completed a "Residual Function Capacity Questionnaire" based on his "clinical evaluation of plaintiff and other testing results."  (Tr. 432-34).  On the form, Dr. Carruth opined that in an 8-hour workday, plaintiff can sit four (4) hours, stand less than ½ hour, walk less than ½ hour, and work (a combination of all three categories) for five (5) hours.  Dr. Carruth opined plaintiff can frequently lift up to 10 lbs., occasionally lift 11-20 lbs., and never lift 21-100 lbs. due to her "foot/heel pain."  Dr. Carruth opined plaintiff can occasionally carry up to 20 lbs. and never carry 21-100 lbs. due, again, to her "foot/heel pain."  The doctor opined plaintiff could not use either of her feet for repetitive actions (as in operating foot controls) due to "foot/ankle pain."  The doctor opined plaintiff could not use *either* her right or left hand for repetitive actions such as simple grasping, pushing and pulling, or fine manipulation due to the "tremors" in her right hand.  Dr. Carruth also opined plaintiff could only occasionally bend, reach above, or stoop, could never squat, crawl, climb, crouch or kneel, and could only occasionally be exposed to various environmental factors.  The doctor identified plaintiff's "bullous disorder, tender feet" as the only objective signs of pain and classified plaintiff's pain as moderate to severe.  The doctor indicated plaintiff's limitations identified on the form had been present for two (2) years, except that her bullous disorder had been present for life, and that her limitations are permanent.  Dr. Carruth opined that plaintiff's condition prevents her from working an 8-hour day on a regular basis, but that her medication and/or pain would not hinder her ability to concentrate.

In his decision, the ALJ included his summary of Dr. Carruth's opinion:

On June 9, 2009, Dr. Carruth completed a *Residual Function Capacity Questionnaire*. He indicated that the claimant was capable of light work with no fine manipulation and no use of her feet for repetitive actions. Dr. Carruth stated that the claimant's pain was moderate to severe due to her bullous disorder and tender feet. He indicated that her limitations were permanent and that they would prevent her from working an 8-hour workday on a regular basis. Dr. Carruth indicated that the claimant's medication and pain would not hinder her ability to concentrate. (Tr. 21).

The ALJ then explained his consideration of Dr. Carruth's opinion and the weight given to his

opinion:

I also considered the opinion evidence received from Dr. Carruth, the claimant's treating physician. Dr. Carruth opined that the claimant was capable of light work with no fine manipulation and no use of her feet for repetitive actions. Dr. Carruth based this opinion on the claimant's bullous foot disorder, which often manifested as recurrent blisters on the bottoms of her feet. At the hearing the claimant also alleged difficulties with her feet, which often required her to wear house shoes to work. Despite the opinion of Dr. Carruth and the testimony of the claimant, there are only three notations regarding complaints of foot pain made to Dr. Carruth, two in October 2006, and one in June 2009. Dr. Carruth's opinion is not supported by examination signs and findings, but appears to have been based mainly on the claimant's subjective statements. Additionally, Dr. Carruth is not a specialist, nor did he refer the claimant to a specialist for evaluation or treatment. On the whole, Dr. Carruth's opinion is inconsistent with medical evidence, and there is good reason to reject his opinion. Therefore, I have afforded it little weight.

(Tr. 23).

The ALJ also considered other opinion evidence and explained the weight given to such

opinions. The ALJ noted:

I considered the medical evidence of Dr. Burgesser, as well as her findings with regard to the claimant's condition. Dr. Burgesser's examination of the claimant revealed 5/5 strength in all muscle groups. She opined that the claimant had normal strength and could button items and pick up a pin. She also noted that the claimant could reach, handle, finger, and feel, and that she could ambulate effectively without the use of an assistive device. I find that Dr. Burgesser's opinion is consistent with the medical evidence as a whole; therefore, there is good reason to adopt Dr. Burgesser's opinion, and I have afforded it great weight. (Tr. 23).

In determining plaintiff's RFC, the ALJ limited plaintiff to light work and, as relevant to this claim,

with only occasional fingering or handling with her right (dominant) hand.  The ALJ did not

include, as functional limitations, no fine manipulation or no use of feet for repetitive actions.

By her second ground, plaintiff contends the ALJ did not make a proper evaluation or

assessment of her treating physician's opinion because the ALJ failed to specifically consider the

individual factors set forth in 20 C.F.R. § 404.1527(d) before determining Dr. Carruth's opinion

was entitled to "little weight."  Plaintiff also argues the ALJ reversibly erred by failing to provide

any basis for giving little weight to Dr. Carruth's opinion with regard to plaintiff's deficits in fine

manipulation.[11]  Plaintiff concludes the ALJ reversibly erred by failing to consider each limitation

reported by the treating physician (although plaintiff only challenges the limitation of no fine

manipulation with plaintiff's right hand) and by providing no rationale for either accepting or

rejecting the physician's conclusion.

When a treating physician's opinion about the nature and severity of a claimant's

impairment is well-supported and not inconsistent with other substantial evidence, the

Commissioner must give the opinion controlling weight.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th

Cir. 2000).  However, the ALJ has the sole responsibility for determining a claimant's disability

status, and he is free to reject the opinion of any physician when the evidence supports a contrary

conclusion.  Consequently, a treating physician's opinions are not conclusive and may be given

little or no weight when good cause is shown.  Reasons stated for giving diminished weight to a

treating physician's opinion should be specific to that determination.  Good cause exists when the

treating physician's opinions are so brief and conclusory that they lack persuasive weight, when

they are not supported by medically acceptable clinical, laboratory, or diagnostic techniques, or

---

[11]Although addressed by defendant, plaintiff only mentions, with little discussion, the propriety of the ALJ's evaluation of Dr. Carruth's opinion regarding plaintiff's foot problems.  Plaintiff focuses her argument under this ground on the ALJ's rejection of Dr. Carruth's findings regarding plaintiff's ability to use her hands for repetitive actions.

when the evidence supports a different conclusion. *Id.*; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).  Generally, an ALJ is permitted to reject the opinion of a treating physician only if he performs a detailed analysis of the treating physician's views under the six-step criteria set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  However, such analysis is not required to support the rejection of the treating physician's opinion when there is no reliable medical evidence from other treating and/or examining physicians controverting the claimant's treating physician. *Newton*, 209 F.3d at 453.

Plaintiff contends the ALJ committed legal error in his evaluation of Dr. Carruth's opinion because the ALJ did not specifically address the six factors set out in section 404.1527(d).[12] The ALJ did not reject Dr. Carruth's opinion based on the opinion of a non-examining physician. Instead, in rejecting Dr. Carruth's findings, the ALJ cited to medical evidence from an examining doctor, Dr. Burgesser, which controverted Dr. Carruth's opinion that plaintiff could not perform any fine manipulation.  The presence of contradictory medical evidence eliminates the requirement to perform the six-step analysis discussed in *Newton*. *Cf. Jones v. Astrue*, 821 F.Supp.2d 842, 852 (N.D. Tex. 2011).

Further, the ALJ properly provided sufficient basis for giving little weight to Dr. Carruth's opinion that plaintiff could perform no fine manipulation with either of her hands.[13]  Although discussed in the paragraph immediately preceding the ALJ's discussion of the weight to be given to Dr. Carruth's opinion, the ALJ noted Dr. Burgesser's examination of plaintiff revealed plaintiff's

---

[12] The ALJ, while finding "good reason to reject" Dr. Carruth's opinion, did not state that he "rejected" Dr. Carruth's opinion but, instead, merely gave the opinion "little weight."  Although simply a matter of semantics, the Court finds the result is the same.

[13] Dr. Carruth's opinion that plaintiff could not perform fine manipulation *with either hand* due to the tremors, rather than restricting the limitation to plaintiff's right hand, was not sufficient to invalidate the entire report, however, such an unsupported finding could be considered by the ALJ in determining the weight to be given to the treating physician's opinions.

ability to reach, handle, finger and feel, and her ability to button items and pick up a pin. (Tr. 23). The ALJ afforded Dr. Burgesser's opinion great weight while affording Dr. Carruth's opinion little weight. While the ALJ, after noting Dr. Carruth's opinion that plaintiff could not perform fine manipulation, arguably should have included an explanatory statement why little weight was given to this opinion, the reasoning is apparent by the ALJ's discussion of Dr. Burgesser's findings regarding plaintiff's performance of fine manipulation immediately prior to his discussion of Dr. Carruth's opinions. The undersigned does not find error sufficient to reverse the ALJ's decision.

The ALJ thoroughly analyzed the medical evidence of record. The majority of the limitations found by Dr. Carruth in his RFC opinion were based on plaintiff's foot ailments, and the ALJ naturally directed his explanation toward how this warranted giving Dr. Carruth's opinion little weight. However, the ALJ considered Dr. Carruth's opinion along with all of the other relevant opinion evidence, and chose to give the opinion diminished weight. The ALJ did not dismiss the treating physician's opinion out of hand. Instead, he considered and cited the controverting medical evidence. Moreover, plaintiff has not indicated how she was harmed by the absence of a more concise explanation of reasons by the ALJ in his decision. Plaintiff's second ground should be denied.

## C. Other Work - Defective Hypothetical

The ALJ posed a hypothetical to the VE concerning an individual who was limited to light work, with (1) only occasional fingering or handling, (2) no significant overhead work, and (3) only simple tasks. Based on this hypothetical, the VE testified there is other work existing in significant numbers that plaintiff is able to perform and identified such work.

By her third ground, plaintiff argues the ALJ failed to include all of her "significant nonexertional limitations" in his hypothetical to the VE, thus, the VE's response does not

constitute substantial evidence sufficient to support the ALJ's finding that there is other work plaintiff can perform. As argued by defendant, plaintiff does not support her argument. Plaintiff does not specify what "significant nonexertional limitations" the ALJ did not include in the hypothetical posed to the VE. Consequently, plaintiff has not adequately presented this claim.

If it is plaintiff's contention that the hypothetical posed to the VE should have included an additional nonexertional limitation of moderate difficulties in concentration, persistence and pace rather than a restriction to only simple tasks, that issue has been addressed in the discussion of plaintiff's first ground concerning whether such limitation was adequately included in the ALJ's RFC finding.

If it is plaintiff's contention that the hypothetical posed to the VE was erroneous because it did not include plaintiff's complaints of a memory impairment and a test range indicating a mild cognitive impairment after a written examination, such contention was also consumed by plaintiff's argument that the RFC limitation did not adequately incorporate petitioner's moderate difficulties in concentration, persistence and pace. The VE identified other work existing in significant numbers in the national and local economies which could be performed by an individual with the limitations indicated. The ALJ properly relied on the VE's testimony to find plaintiff was not disabled because she could still perform a significant number of jobs. The ALJ's decision at Step Five is supported by substantial evidence. Plaintiff's third ground should be denied.

## D. Credibility Evaluation

During the administrative hearing, plaintiff testified:

> I'm just in pain, constant body pain. I feel like somebody is – I guess like they've just beat me up with a baseball bat. Some days I feel like they've ran me over with a car and beat me up at the same time. I mean it's just a constant pain.

(Tr. 42). Plaintiff described her pain as "stabbing, shooting, burning, aching, [and] throbbing" and

further testified:

> [I]t feels like I'm on fire sometimes.  It feels just, you know, like somebody has cut
> you with a knife sometimes.

Plaintiff described her pain as an "all-over pain" which is exacerbated when she gets a migraine

headache.  (Tr. 43).  In such instances, plaintiff described her pain:

> It's just like somebody has just come up and beat you . . . like somebody sucker-
> punched you somewhere . . . it's like I don't even want my clothes touching me.
> That's how bad it hurts.  I don't want to wear shoes.

Plaintiff advised she experiences pain the most in her back and side areas, and that the "all-over

pain" might be better some times, but that the "certain-area pain" is always present.  (Tr. 43).

Plaintiff advised that on bad days, she does not want to get out of bed because of the pain.  Plaintiff

advised the main thing that keeps her from being able to work is the pain.  (Tr. 47).

The ALJ found plaintiff has a severe medical impairment of somatoform disorder,

presumably based on Dr. Gradel's diagnosis of a pain disorder (Tr. 340), and the Psychiatric

Review Techniques completed by the state agency physicians identifying somatoform disorders.

(Tr. 349, 371).  Listing 12.07 describes somatoform disorders as "[p]hysical symptoms for which

there are no demonstrable organic findings or known physiological mechanisms."  The ALJ

analyzed plaintiff's somatoform disorder under the criteria for Listing 12.07 and determined the

disorder did not meet the Listing because plaintiff did not have marked or extreme limitations as a

result of the disorder.  (Tr. 17-18).  The ALJ did find plaintiff's somatoform disorder did cause

mild restrictions and moderate difficulties.

In his decision, the ALJ stated:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be
> expected to produce the claimant's pain or other symptoms has been shown, I must
> evaluate the intensity, persistence, and limiting effects of the claimant's symptoms
> to determine the extent to which they limit the claimant's ability to do basic work
> activities.  For this purpose, whenever statements about the intensity, persistence, or

> functionally limiting effects of pain or other symptoms are not substantiated by
> objective medical evidence, I must make a finding on the credibility of the
> statements based on a consideration of the entire case record.

The ALJ made the following determinations as to plaintiff's credibility:

> After careful consideration of the evidence, I find that, prior to the date last insured,
> the claimant's medically determinable impairments could reasonably have been
> expected to cause some of the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence, and limiting effects of these
> symptoms were not credible to the extent they were inconsistent with the above
> residual functional capacity assessment. (Tr. 19).

The ALJ then detailed the medical record with regard to plaintiff's complaints, diagnoses,

treatment, and disability evaluations, as well as plaintiff's hearing testimony. (Tr. 19-21). The

ALJ then noted that for pain itself to be disabling, it must be constant, unremitting and wholly

unresponsive to therapeutic treatment, that subjective complaints of pain must be reasonably

consistent with the objective record in order to be found credible, and that he was authorized to

make credibility decisions with regard to the subjective complaints of pain. (Tr. 22). The ALJ

then determined:

> In this case, I note that the claimant's subjective complaints of pain are out of
> proportion to the objective medical evidence. The claimant's statements concerning
> her impairments and their impact on her ability to work are considerably more
> limited and restricted than what is established by the medical evidence, her own
> contemporaneous statements to treating sources, and medical source opinions. For
> those reasons and the reasons discussed below, I find that the claimant's statements
> are generally credible, but not to the extent alleged.
>
> My review of the medical records yields little or no objective evidence to support
> the severity of the claimant's claims. Specifically, the claimant underwent left
> shoulder arthroscopic surgery in February 2004 after which she underwent a course
> of physical therapy. Since that time, the claimant has continued to complain of
> shoulder pain for which she has received a steady course of conservative treatment
> modalities that have included prescription pain medication and injections. . . . (Tr.
> 22).

The ALJ detailed plaintiff's other physical impairments, records of treatments, success of

treatments, and/or lack of specialized treatment, and evaluated the opinion evidence of record.[14]  (Tr.

22-24).  The ALJ then, "[c]onsidering all of the credible medical evidence and giving the claimant the

benefit of all doubt as to her subjective complaints," made his RFC determination, explaining his

physical restrictions.  The ALJ further stated:

> [B]ecause of the claimant's clear preoccupation with pain, and giving her the benefit of
> every doubt as to claims of memory loss, I find that she was able to understand,
> remember, and carry-out simple tasks.  The objective medical evidence, when
> considered in the light most favorable to the claimant, did not warrant further
> limitations.

By her fourth ground, plaintiff contends the ALJ improperly assessed her credibility.  Plaintiff

initially argues the ALJ's search for objective medical evidence to establish the intensity, severity and

persistence of her complaints of disabling pain was unnecessary because the ALJ had determined

plaintiff has a somatoform disorder – a psychiatric disorder whereby plaintiff experiences physical

pain for which there is no clear medical reason (that plaintiff has a somatoform disorder means merely

that the pain has a psychological cause rather than a physical one).  Plaintiff contends the ALJ's use of

the lack of objective medical evidence to support her complaints of disabling pain as the basis for his

credibility determination was improper because, by definition, the pain experienced due to a

somatoform disorder is not the result of an objective, physical impairment.  Plaintiff concludes that

since the ALJ found plaintiff has a severe somatoform disorder, he improperly used the lack of

objective evidence to support plaintiff's claims of severe pain to diminish her credibility.

If plaintiff's administrative hearing testimony about the severity of her pain had been adopted

by the ALJ, then the RFC determination would not be valid.  Plaintiff's testimony was basically that

her pain was, in and of itself, disabling.  The ALJ, prior to making his credibility determination,

---

[14]The ALJ noted plaintiff's testimony that she suffered from fibromyalgia, but found there was no medical evidence prior to
the date last insured that substantiated this allegation, or evidence that she complained of the symptoms she testified to at her
hearing prior to the date last insured.

addressed plaintiff's somatoform disorder, finding plaintiff did not have marked or extreme limitations from the disorder. (Tr. 17-18). Since the ALJ found the somatoform disorder was severe, it is reasonable to conclude that the pain plaintiff experiences from the disorder is something more than a "slight abnormality having a minimal effect" and less than an impairment which has a "marked or extreme limitation." A claim of somatoform disorder does not, by definition, mean an ALJ can not consider the lack of objective evidence in rejecting a claimant's subjective complaints. Indeed, there must be evidence establishing the disorder. Here, the ALJ found the somatoform disorder to be a severe impairment. Consequently, this is not a case where the ALJ failed to appreciate the psychological nature of plaintiff's somatoform disorder (the ALJ noted plaintiff's "clear preoccupation with pain") or indicated a plain misunderstanding of the psychological nature of the claimant's mental impairment. The ALJ stated he did not dispute plaintiff's perceived pain, but noted that plaintiff's statements as to how much her symptoms (such as pain) impact her ability to work were much more limiting than what was established by, not only the medical evidence, but also by her own contemporaneous statements to treating sources and medical source opinions. In fact, the ALJ stated he gave plaintiff the benefit of all doubt as to her subjective complaints and found her statements were generally credible, just not to the extent alleged. The ALJ only discounted plaintiff's credibility as to how much her pain and/or other symptoms limited her functioning, apparently concluding plaintiff could adequately deal with her symptoms of pain or make appropriate accommodations within the RFC found.

The ALJ found plaintiff had a somatoform disorder. Symptoms experienced as a result of such a disorder have no physical, objective medical basis. Therefore, the Court agrees with plaintiff that the medical records would not contain any evidence of an impairment which would be expected to produce pain experienced as a result of a somatoform disorder. The ALJ could, however,

legitimately review the medical records for documentation of plaintiff's perceived pain or, more accurately, of her complaints of pain, *i.e.*, the presence or absence of any repeated complaints of pain by plaintiff to her physicians and/or attempts to treat her pain, whether simply perceived or real, <u>will be reflected in the record</u> and the lack of such can be properly considered.  Review of the medical records relevant to this issue reveal the following:

> On April 11, 2008, plaintiff presented to Dr. Carruth with complaints of right hand tremor. (Tr. 284).  Examination revealed plaintiff was not in acute distress and no notations of complaints of pain were made.

> On July 1, 2008, plaintiff presented to Dr. Lewis with complaints of weight gain, change in sleeping habits, hot/cold intolerance, abdominal pain, headaches, and memory loss. (Tr. 331-32; 429-30).  Plaintiff did not complain of any musculoskeletal pain, loss of alertness, or neurological weakness or numbness.

> On July 23, 2008, plaintiff presented to Dr. Hill for a neurological consultation with complaints of persistent right hand tremor. (Tr. 249).  Plaintiff indicated she had a "lot of trouble getting comfortable to get to sleep but otherwise has had no issues with that."  Plaintiff advised she had a little bit of trouble with her memory but nothing significant and had been able to continue working.  Plaintiff advised she cleans houses and has had not problems with the use of her hands otherwise, other than the tremor itself.  It was the impression of Dr. Hill that plaintiff's tremor was stress-related, and that her use of the hand was important.

> On June 1, 2009, plaintiff presented to Dr. Carruth with complaints of recurrent blisters on the bottom of her right foot with associated pain, and an ear ache. (Tr. 407).  Plaintiff also complained of fatigue and generalized muscle pain.  Plaintiff was not in acute distress.

> On May 4, 2009, plaintiff presented to Dr. Lewis with continued complaints of right hand tremor, migraines, right hand grip weakness and pain with use, right leg heaviness and pain from the knee down, bilateral numbness/tingling in hands and feet, and fatigue. (Tr. 421).  Plaintiff was prescribed pain relievers on an as needed basis.

The lack of any real documentation of plaintiff's complaints of unremitting, disabling pain, together with her statements in the records to her treating physicians, constitute substantial evidence supporting the ALJ's credibility determination and his ultimate finding that her pain did not affect the RFC

determination.

If the ALJ did not understand or appreciate the fact that there would not be a medically documented condition expected to cause pain when a somatoform disorder exists, then a different issue would be presented. That is what it appears plaintiff is arguing. In this particular case, however, the ALJ's opinion is quite thorough and rebuts that conclusion. Further, the opinion, when considered in its entirety, reflects the ALJ finding was that plaintiff's pain, while present, was not so severe and debilitating as to eliminate light work with the restrictions identified in the RFC.

Plaintiff next argues the ALJ improperly assessed her credibility because he did not "undertake the detailed assessment" set forth in SSR 96-7p for evaluating plaintiff's credibility.[15] Plaintiff does not identify which factors she contends the ALJ did not consider and/or did not adequately detail in his decision. Without a specific pleading, this Court is left to speculate as to the errors plaintiff is alleging. Nonetheless, review of the full context of the ALJ's decision and his specific credibility assessments indicates the ALJ did address the applicable factors outlined in SSR 96-7p. Although he did not address the factors in an itemized approach, specifically articulating each factor in order, it does appear the ALJ made a full and proper evaluation of plaintiff's credibility. Plaintiff's fourth ground should be denied.

---

[15]When assessing the credibility of an individual's statements, the adjudicator must consider, in addition to the objective medical evidence:

1.    The individual's daily activities;
2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.    Factors that precipitate and aggravate the symptoms;
4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

V.

## RECOMMENDATION

It is the recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of benefits be AFFIRMED.

VI.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____ day of September 2012.

_____

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written

objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).